**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JANICE M. SNELL,

      Plaintiff,

v.                                                Case No.  8:06-cv-1362-T-TBM

MICHAEL J. ASTRUE,[1]
**Commissioner of the United States
Social Security Administration,**

      Defendant.

_____/

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments.  For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was fifty-two years of age at the time of her administrative hearing in September 2005.  Plaintiff stands 5', 3" tall and weighed 239 pounds at that time.  Plaintiff has a two-year college education.  Her past relevant work was as a youth teacher assistant and interview clerk.  Plaintiff applied for disability benefits and Supplemental Security Income payments in October 2003, alleging disability as of May 23, 2003, by reason of headaches,

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

numbness on the left side of her body, and pain and stiffness in her neck. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified that she has been unable to work full time since she received treatment for a cyst at the stem of her brain, which was discovered after she had a slip-and-fall accident. In 2002, she began having headaches and feeling pressure on her left side. After several MRIs and CAT scans, she was advised that she needed surgery to remove the cyst. The surgery was performed in July 2003 and was followed by physical therapy. Plaintiff testified that after the surgery, she was unable to move anything on her left side. Her left leg became "heavy" and clumsy. Physical therapy only aggravated the condition. Not all of the cyst was removed. Another doctor adviser her that during the surgery her nerve was damaged or stretched. Her physical condition worsened. She claims continuous pain throughout the entire left side of her body. Her fingers on the left hand tingle. Her shoulders and neck and left legs get swollen. Plaintiff stated the pain is 24 hours a day. Plaintiff takes Skelaxin, Ibuprofen, and Darvocet for the pain and to relax her muscles. The medicine helps a little bit but one of the side effects is that she has to takes naps for two to two and one-half hours during the day after taking her medicine. She has become depressed and takes Paxil "every now and then." Plaintiff has herniated disks, which also cause pain. She experiences pressure on her bladder, which causes her to need to urinate. She claims her doctor kept her out of

work for the entire school year in 2003-2004 because of her condition.  Plaintiff worked for about five months beginning in October 2004.  She helped people fill out applications for FEMA.  They accommodated her condition by allowing her to take a nap after taking her medications and to leave early often.  When that job ended, she tried to find other work.

Plaintiff testified to a limited daily regimen.  As she describes the day, she gets up at 4 a..m. and sits until about 7 a.m.  She then returns to bed and sleeps until 10 or 11 a.m.  She then watches television or reads.  She may take another nap in the afternoon.  She sometimes goes to church.  She cannot walk a city block without tiring and becoming short of breath.  When she sits, she has to sit erect.  After two hours of sitting, she must get up, go to the bathroom, and lie down.  She can stand for about thirty minutes but then must go to the bathroom.  She cannot lift, grip, or carry anything with her left hand but could probably lift between ten and twenty pounds with her right hand.  She cannot raise her left arm over her head, nor can she bend, squat, or kneel.

She cannot participate in any of her previous hobbies, such as bicycling, running, and cooking.  Her mother does all the cooking, and her mother, sister, and daughter do the majority of the housework.  Because of the limited use of her left side, she also needs assistance with personal hygiene.

In sum, Plaintiff testified she could not return to her former job because of the walking involved.  She testified further that she might be able to work at something if she were allowed to nap after taking her medication.  (R. 367-406).

Jane Bougher, a vocational expert ("VE") initially described Plaintiff's past work as a youth teacher assistant as sedentary to light exertional work and the interviewing clerk job as sedentary work. Both were skilled positions. Additionally, she identified certain transferable skills. On an assumption that Plaintiff could perform light, exertional work, stand, walk, and sit for six hours in an eight-hour workday and had unlimited push and pull capacity, the VE opined Plaintiff could still do her past work. If further restrictions for only occasional climbing on ladders, ropes, scaffolds, and limited reaching were added, the opinion was unchanged. If Plaintiff's testimony was credited and she could sit for two hours, then take a short break before returning to work, the VE opined she could do the job of interviewing clerk. If she could sit for two hours but then would need to lie down for two hours, she could not do any work. (R. 406-11).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of January 17, 2006, the ALJ determined that while Plaintiff has severe impairments related to an Arnold Chiari malformation, hypertension, obesity, and is status-post decompression of her posterior fossa for a Chiari Type I malformation and cervical syrinx, she nonetheless had the residual functional capacity to perform light exertional work and was capable of sitting, standing and walking six hours in an eight-hour workday but with restrictions for no climbing of ladders or scaffolds; no reaching overhead with her left

arm/hand; and only occasional stooping, balancing, kneeling, crouching, or crawling.[2] Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-19). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

---

[2] Apart from his ultimate conclusion, the ALJ determined that Plaintiff had engaged in substantial gainful activity after her alleged onset date for the period from October through December 2004 and January through at least February 2005.

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in correctly applying the pain standard to the evidence in this case; and

(2) Whether the Commissioner erred in rejecting the opinion of the treating neurosurgeon, Dr. Campanelli.

By her first claim, Plaintiff urges that "there was no reason for rejecting the claimant's complaints of pain which are supported by substantial competent evidence." (Doc. 19 at 7).  By this argument, her complaints of pain, numbness, and weakness were consistent, well-documented, and fully accepted by various treating doctors.  In Plaintiff's view, the reasons stated by the ALJ for discounting her subjective testimony are unsupported by substantial evidence.  In particular, she notes that the ALJ's citation to the lack of additional surgery, emergency room treatment, and marked diminished range of motion or muscle atrophy did not support the decision to discount Plaintiff's testimony.

In this circuit, subjective complaints such as pain, fatigue, or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the

alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Hale, 831 F.2d at 1012.

     As the decision reflects, the ALJ fairly reviewed the medical record and before reaching his conclusion on the Plaintiff's RFC, recognized his obligation to consider Plaintiff's subjective testimony in accordance with the regulatory provisions at 20 C.F.R. §§ 404.1529, 416.929 as well as SSR 96-7p. In this circuit, proper application of the regulatory standard will satisfy the circuit's "pain standard." Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002). In application of this standard, the decision also reflects that the ALJ recognized the Plaintiff's subjective complaints and credited that Plaintiff would have some pain limitations as a result of her decompression of the posterior fossa for the Chiari type I malformation and her cervical syrinx. However, the ALJ concluded that the evidence as a

whole did not substantiate any cause for the disabling complaints made by Plaintiff.  As set forth below, upon my independent review of the record, I find this conclusion is supported by substantial evidence.

As for whether the ALJ adequately and properly discounted her subjective complaints, Plaintiff is correct that the ALJ the record's failure to reveal significant forms of treatment such as additional surgery, periods of hospitalization, or emergency room treatment in support of his conclusion.  On my review of the record, these observations by the ALJ are accurate even if subject to criticism that they offer an insufficient basis to discredit Plaintiff's testimony.  See (R. 17).  However, as the decision reflects, the ALJ further noted that the record did not reveal such marked diminished range of motion or muscle atrophy as would accompany her alleged disability and that by Plaintiff's own testimony, she had worked for at least five months at substantial gainful levels and was currently seeking employment as well as receiving unemployment benefits.  Id.  Furthermore, the ALJ concluded, "the claimant's subjective complaints are not fully credible considering [her] own description of her employment activities, the degree of medical treatment required, discrepancies between claimant's assertions and information contained in the documentary reports, the reports of treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions concerning her ability to work."  Id.  As noted above, the ALJ may discount or discredit a claimant's subjective testimony by stating adequate and explicit reasons.

Here, upon my own review of the medical evidence, I conclude that the ALJ has adequately stated reasons to discount Plaintiff's subjective testimony to the extent that she claimed to be disabled from all work activity. Even if it was improper for the ALJ to cite to a lack of further surgery or emergency care, a point I do not need to reach, his conclusions that the Plaintiff's medical history and medical records, including the clinical findings made therein, are accurate and provide sufficient basis for him to discount Plaintiff's credibility. No treating or evaluating source documented impairments giving rise to the degree of limitations claimed by Plaintiff. On the contrary, the reports of treating doctors such as Dr. Michael Campanelli and Dr. Juan Joy suggest that Plaintiff was not wholly disabled from all work and that her symptoms were exaggerated. As stated by the ALJ, her complaints, in some instances, were contradicted by or at least inconsistent with the statements by her treating doctors, who could not account for some of her complaints on the basis of the objective evidence and clinical findings. While her condition did give rise to a reduced range of motion on her left side, the ALJ could nonetheless, on this record, conclude that Plaintiff overstated her limitations. I find no basis for a remand on this issue.

By her second claim, Plaintiff urges that the ALJ failed to give appropriate weight to Plaintiff's treating physician Dr. Campanelli and furthermore failed to state adequately his reasons for disregarding the doctor's opinions. By this argument, the doctor imposed (unspecified) substantial and significant limitations on the Plaintiff that substantially bear on her residual functional capacity. (Doc. 19 at 10).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. Id.; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

Unfortunately, Plaintiff's brief does not set forth the "substantial and significant limitations" noted by Dr. Campanelli, which were disregarded by the ALJ; and thus, the matter cannot be addressed more directly. However, by my review of this doctor's records (along with those of his colleague Dr. Joy), the claim is without merit. See (R. 171-92). While Dr. Campanelli made general statements that Plaintiff would be unable to return to her job as a youth assistant teacher in the months following her surgery in late August 2003, his reports otherwise reflect no findings of disabling symptoms or limitations. Indeed, a fair reading of these doctors' reports indicate findings that the surgery had been successful,

11

Plaintiff's condition was improved, and neurologically she was doing well and capable of working. On his final post-surgical report, Campanelli noted Plaintiff's gait was normal; her incision was well-healed; she had difficulty lifting her left arm above her shoulder level; she had slight restriction in cervical rotational range of motion to the left; and her biceps and triceps strength remained symmetrical, with slight weakness of the deltoid on the left. (R. 171). By January 2004, the doctor released Plaintiff to her primary care doctor and sent her for a functional capacity evaluation. The results of this evaluation certainly do not assist the Plaintiff.[3] Further, Dr Campanelli's review of the objective evidence also suggests a successful decompression of the cerebellar tonsils and substantial reduction in the size of the syrinx. Id. Dr. Campanelli's opinion that the surgery had gone well and that Plaintiff's condition was improved is supported by a subsequent consultation at the University of South Florida. There, Dr. Harry van Loveren, M.D., Professor and Chairman of the Department of Neurosurgery, reported that the "actual results clinically, as well as radiologically, show a successful surgery with successful post-operative course." (R. 269). By his review, Plaintiff's continued complaints of pain and numbness were difficult to explain and likely the sequelae of earlier damage to the spinal cord was from the expanding cyst. In any event, in his view, the situation called for no further surgical intervention, and he recommended a therapeutic occipital nerve infiltration, which was subsequently performed. (R. 266-70).

---

[3]Due to Plaintiff's extremely poor effort, the results of the evaluation were deemed invalid. Throughout the testing, the report reflects Plaintiff's efforts at symptom. The conclusion was that Plaintiff could return to work. See (R. 200-39)

By my review, rather than rejecting these records, the ALJ fairly reviewed them and incorporated the pertinent findings into his conclusions concerning Plaintiff's RFC.  Contrary to Plaintiff's assertion on this appeal, Dr. Campanelli's opinions are not consistent with her claims of incapacity.  His restrictions during the 2003-2004 school year do not dictate a different conclusion.   In any event, even if the ALJ erred in concluding that Plaintiff could return to her past work as a youth assistant teacher, Plaintiff wholly fails to demonstrate her inability to again do work as an interview clerk.

IV.

The court does not doubt that Plaintiff suffers some limitations from her physical condition; however, there is evidence to support the ALJ's findings and conclusions that she is not disabled as that term is used under the Act.  For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the  Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 24th day of September 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record